**REED'S ESTATE et al. v. SCOFIELD, Collector of Internal Revenue.**

Civ. No. 397.

United States District Court
W. D. Texas, Austin Division.

March 6, 1950.

Wright Matthews, Dallas, Texas, for plaintiff.

Theron Lamar Caudle, Assistant Attorney General, Andrew D. Sharpe, Rhodes S. Baker, Special Assistants to the Attorney General, H. W. Moursund, United States Attorney, San Antonio, Texas, for defendant.

RICE, Chief Judge.

The Court, having examined the pleadings and stipulation of facts, having considered the evidence, having read and considered the briefs filed by the parties, and being otherwise fully advised in the premises, makes and enters the following findings of fact and conclusions of law.

### Findings of Fact.

I. This is a suit to recover income tax and interest paid by M. H. Reed, deceased, hereinafter referred to as taxpayer, for the year 1941. The suit as originally filed sought recovery of $21,268.32, plus statutory interest. However, plaintiffs have conceded the correctness of the defendant's position with respect to all but two of the

issues, thereby materially reducing the amount involved herein.

II. Plaintiffs reside in Austin, Texas and are the executors and trustees under taxpayer's will. Taxpayer died on December 11, 1945, and was at all times material hereto a resident of Texas. One of the plaintiffs, Mrs. Fagan Dickson, formerly Mrs. Roberta Purvis Reed, was taxpayer's wife at the time of his death.

III. The defendant Frank Scofield was and is the Collector of Internal Revenue for the First District of Texas to whom the deficiency tax and interest herein involved were paid. He resides in Austin, Texas.

IV. In their individual income tax returns which were filed separately for the year 1941, taxpayer and his wife claimed as a community loss the sum of $39.000 representing the loss allegedly sustained in that year on an oil and gas lease (hereinafter referred to as the Wiess lease). In addition they each claimed depreciation for that year of $2,200 on the Paramount Building located in Austin, Texas.

V. On February 1, 1930, Mrs. Laura E. Wiess executed an oil and gas lease to E. L. Price covering approximately 15,204 acres of land in Bee and Goliad Counties, State of Texas. The primary term of the lease was ten years and "as long thereafter as oil, gas or other mineral is produced from said land."

VI. On October 23, 1930, E. S. Price and E. S. Price Oil Corporation assigned a portion of the lease to taxpayer. Price also made many other assignments covering other portions of the lease. At the time taxpayer received his assignment, he was married to his first wife, Margaret Badger Reed, and the cost of the lease to the then marital community was $78,000. Taxpayer and Margaret Badger Reed were divorced in 1936, and in the property settlement taxpayer retained a one-half interest in the lease, the cost of his one-half interest thus being $39,000. The other one-half interest was retained by Margaret Badger Reed, who died on March 9, 1940. In the estate tax return filed in her behalf, her interest in the lease was reported as valueless as of the date of her death.

VII. On or about January 13, 1940, Mrs. Weiss received notice from two individuals, B. F. and Paul Boyd, to the effect that they were assignees of E. S. Price and that due to discovery of oil and gas during the primary term of the lease they were claiming that their assignments were still valid and would extend beyond February 1, 1940, the termination date of the lease.

VIII. As a result of the notice received from the Boyds, Mrs. Wiess, on February 2, 1940, instituted suit to clear title to her land, alleging that the lease had expired according to its terms on February 1, 1940, because of the failure of E. S. Price or any assignee to produce oil or gas during the primary term. The suit, which was filed in the District Court of Goliad County, Texas, and was styled No. 4375, Laura Wiess v. E. S. Price et al., joined as defendants not only E. S. Price but the Boyds and all other parties who held assignments under Price, including taxpayer and his first wife, Margaret Badger Reed.

IX. The cited defendants totaled approximately 235 persons and companies, all of whom appear in the chain of assignments originating with the original lessee, E. S. Price. Apparently approximately sixty-seven of them resided in Texas, and the balance either resided outside the state or their residences were unknown.

X. The nonresident defendants, except the Boyds, and defendants whose residences were unknown, were represented by a court-appointed attorney who filed a general demurrer and general denial in their behalf. The attorney appointed by the Court took no active part in the trial. The Boyds were represented by their personal attorneys who filed an answer and cross action in their behalf. None of the defendants personally served with citations, except some oil companies which were asserting their easement rights, filed responsive pleadings and none of the defendants, except the Boyds, contended that the lease was extended beyond its termination date. Taxpayer and his former wife, Margaret Badger Reed, were each personally served with citation. Neither of them filed defensive pleadings but on August 30, 1940, a disclaimer disclaiming any interest in the lease was filed on behalf

of Mrs. Reed. Taxpayer filed a similar disclaimer on January 20, 1941, the execution date of his disclaimer being unknown.

XI. The state court case was tried on December 26, 1940. With reference to the issue concerning whether oil and gas had been produced on the lease, the evidence showed that drilling commenced in 1930 and continued for several years. During that time a total of five or six wells were drilled, the last in 1938. There was a slight show of oil in some of the early wells but most of them were dry holes and none of them produced in paying quantities. No royalties were ever paid to Mrs. Wiess, the landowner. The Court took the case under advisement and on January 20, 1941, rendered judgment in favor of Mrs. Wiess, specifically decreeing that the lease in question executed on February 1, 1930, for a primary term of ten years, had "in fact expired and terminated." Taxpayer was disposed of in the judgment as a defaulting defendant. Only the Boyds gave notice of appeal and their appeal was not perfected.

XII. The Wiess lease was of no value to taxpayer at the beginning of 1941. It became worthless to him prior to that year.

XIII. Upon audit of the individual income tax returns which were filed separately by taxpayer and his wife for the year 1941, the Commissioner of Internal Revenue determined that the Wiess lease loss was taxpayer's separate loss rather than the community loss of himself and his wife (which determination was concededly correct), and that the loss was sustained in 1940 and was allowable in that year instead of 1941. The Commissioner also determined that the correct amount of depreciation allowable to taxpayer and his wife on the Paramount Building for 1941 was $825 to each taxpayer ($1,650 to the community) instead of $2,200 ($4,400 to the community), the amount claimed.

XIV. On the basis of these adjustments and other adjustments, the correctness of which plaintiffs have conceded, the Commissioner determined that taxpayer owed for the year 1941 an additional tax of $16,887.32, which amount, together with interest totaling $4,381.22, was duly assessed and paid. The payment consisted of cash in the amount of $20,949.38, and the application of an overassessment for the year 1940 resulting from the allowance of the Wiess lease in that year in the amount of $319.16. Claim for refund was filed with the Commissioner, who, after due consideration, gave formal notice of rejection and this suit ensued.

XV. The Paramount Building, which was bought in 1915, was acquired by Majestic Realty Company, a corporation, in 1928, and was held by the corporation until its liquidation on December 31, 1940, at which time taxpayer and his wife acquired it as part of their community estate. The building, which was well constructed of hollow tile and brick veneer, was leased to Interstate Theaters which operated it as a movie house, subleasing part of the ground floor to retail businesses. The parties conceded that the correct basis of the property for depreciation was $55,000 and that it was depreciable by the community for the year 1941 at the rate of either 4% (computed on the basis of an estimated useful life of the property of twenty-five years), as contended by plaintiffs, or at the rate of 3% (computed on the basis of an estimated useful life of the property of thirty-three and one-third years), as determined by the Commissioner, i. e., that the amount of depreciation allowable for the year 1941 was either $2,200 to the community ($1,100 to each taxpayer), resulting from the 4% rate, or $1,650 to the community ($825 to each taxpayer), resulting from the 3% rate. On December 31, 1940, the building was in an excellent state of preservation and had an estimated useful life from that date of thirty-three and one-third years.

Conclusions of Law.

I. The Court has jurisdiction of the parties and the subject matter.

II. The state court suit, which terminated with a judgment entered in 1941, did not affect the value of the Wiess Lease to taxpayer and did not postpone his loss in the lease to that year. The lease was of no value to taxpayer at the beginning of 1941. It became worthless to him prior to that year. There was no fixed or identifia-

ble event which determined that taxpayer's loss in the lease was sustained in 1941.

■ III. The Paramount Building had an estimated useful life from December 31, 1940, of thirty-three and one-third years, resulting in a 3% rate of depreciation for the year 1941.

IV. The determination of the Commissioner of Internal Revenue resulting in the deficiency assessment was in all respects correct and the collection of the deficiency tax and interest by the defendant was proper.

V. Defendant is entitled to judgment dismissing plaintiffs' complaint with prejudice, together with costs.